36 F.3d 1106
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Fred Ashley BUCKLEY, Defendant-Appellant.
 No. 94-5050.
 United States Court of Appeals, Tenth Circuit.
 Sept. 26, 1994.
 
 ORDER AND JUDGMENT[1]
 Before MOORE, ANDERSON, and KELLY, Circuit Judges.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App. P. 34(a); 10th Cir. R. 34.1.9. The cause is therefore ordered submitted without oral argument.
 
 
 2
 Fred Ashley Buckley entered a conditional plea of guilty to a one-count indictment charging him with possessing a shotgun after previously having been convicted of a felony, in violation of 18 U.S.C. 922(g) and 924(a)(2). He appeals from the denial of his motion to suppress statements he made after he was placed under arrest, contending that the arresting authorities did not obtain from him a valid, voluntary waiver of his Fifth Amendment right to remain silent prior to interrogating him as to his possession of a firearm. The essence of Mr. Buckley's argument with respect to the motion to suppress is that when the officers were questioning him he manifested a reluctance to speak and his waiver was equivocal. He equates this "ambiguity" to an implied invocation of his Fifth Amendment rights, or, at least, a tacit refusal to waive those rights. The district court received testimony on the point and concluded "that defendant did not, either equivocally or unequivocally, invoke his right to remain silent." R. Vol. I, Tab 20 at 2. We affirm.
 
 
 3
 Both the federal public defender and the government have filed succinct and professional briefs, which come straight to the point. There is no dispute that authorities from three agencies went to Mr. Buckley's place of work to arrest him on a charge of arson. An agent of the Bureau of Alcohol, Tobacco, and Firearms went along with the Tulsa County deputy sheriff and the state fire marshal, because Buckley was also suspected of possessing a firearm after having formerly been convicted of a felony.
 
 
 4
 The officers arrested Buckley and read him his rights from a printed card. Jeff Fulton, a special agent with the United States Treasury Bureau of Alcohol, Tobacco, and Firearms, testified as follows at the suppression hearing:
 
 
 5
 Q What if anything occurred after you apprehended the defendant regarding his rights to remain silent, et cetera?
 
 
 6
 A The deputy who was in uniform advised him that he was executing--in my presence advised him he was executing a state warrant and Mirandized him.
 
 
 7
 Q When you say Mirandized, what do you mean?
 
 
 8
 A He took a card from his--I think it was from his uniform pocket and read him his rights to remain silent, an attorney, et cetera, off the card.
 
 
 9
 Q Did he in fact tell the defendant that he had the right to remain silent?
 
 
 10
 A He did.
 
 
 11
 Q Did he tell the defendant that he had the right to counsel?
 
 
 12
 A He did.
 
 
 13
 Q Did he tell the defendant that if he couldn't afford counsel one would be appointed for him before any questioning?
 
 
 14
 A He did.
 
 
 15
 Q Did he tell the defendant anything he did say, if he waived counsel, would be used against--could be used against him in court?
 
 
 16
 A He did.
 
 
 17
 Q Now, following that rights advisement, did you have a conversation with the defendant?
 
 
 18
 A Yes. Myself and Don Andrews, the state fire marshal, did.
 
 
 19
 Q What if anything did you ask the defendant and what did he tell you?
 
 
 20
 A He was already aware that he was arrested on the arson charges and I questioned him about a firearm. Said I had information he had stolen a firearm from a gentleman he was staying with, and he proceeded--he got real nervous, more so than about the firearm, and we questioned him about what his problem was at that point. He said, well, I've got something on me type thing. We had patted him down for weapons, but we hadn't done a search at that point of emptying out his pockets or his wallet, et cetera.
 
 
 21
 Q Did you subsequently find out what it was that the defendant had on him?
 
 
 22
 A Yes. He said, I've got some grass or marijuana on me and we pulled it out of his pocket.
 
 
 23
 R. Vol. III at 6-7.
 
 
 24
 Thereafter, Buckley gave officers a written statement admitting that he possessed a firearm. The officers did not give multiple, separate Miranda warnings to Mr. Buckley, first with respect to the arson charge, then with respect to drugs on his person, and, finally, with respect to the gun that he may have had in his possession. The officers relied upon the Miranda warning given at the beginning of their conversation with Buckley, and the questioning was intertwined and took place within a short space of time. The defense relies upon the fact that Mr. Buckley appeared nervous and hesitant, at least as to his possession of drugs, but acknowledges that Mr. Buckley at no time asked for an attorney or in any other way expressly exercised his right to remain silent.
 
 
 25
 The recent Supreme Court decision in Davis v. United States, 114 S.Ct. 2350 (1994), is dispositive. The court made clear that:
 
 
 26
 [W]e decline to adopt a rule requiring officers to ask clarifying questions. If the suspect's statement is not an unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning him.
 
 
 27
 ... [W]e are unwilling to create a third layer of prophylaxis to prevent police questioning when the suspect might want a lawyer. Unless the suspect actually requests an attorney, questioning may continue.
 
 
 28
 Id. at 2356-57 (emphasis in original).
 
 
 29
 Furthermore, and in any event, we agree with the district court that nothing in the testimony given at the suppression hearing can be construed as an invocation by Mr. Buckley of his Fifth Amendment right to remain silent (or his Sixth Amendment right to the presence of counsel), with respect to his unlawful possession of a firearm. Accordingly, the order of the district court and Mr. Buckleyn's subsequent conviction are AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470